## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ANDREW YEE,

              Plaintiff,

     v.

EQUITYEXPERTS.ORG, LLC,
a Michigan limited liability
company,

              Defendant.

Case No. 17-10074
Hon. Terrence G. Berg

## OPINION AND ORDER DENYING PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT (Dkt. 20)

### I.  Introduction

This is an action for damages brought against a debt collector for alleged violations of the Fair Debt Collection Practices Act ("FDCPA") and the Michigan Occupational Code ("MOC"). In January 2016, Plaintiff fell behind on his condominium association dues. That same month, Plaintiff's condo association hired Defendant to collect Plaintiff's past due assessments. In addition to collecting the default sums, Defendant charged Plaintiff "collection costs" associated with its efforts to collect, which Defendant maintains are charges authorized under Plaintiff's condo association agreement. Plaintiff disagrees and argues Defendant violated the FDCPA and MOC by, among other things, collecting late fees and costs allegedly

incurred by Defendant's collection efforts. The Court heard oral argument on Plaintiff's Amended Motion for Summary Judgment on April 16, 2018. For the reasons outlined below, Plaintiff's Amended Motion for Summary Judgment is **DENIED**.

## II. Background

On December 18, 2008, Plaintiff bought a condominium unit located at 16735 Glasgow Ct., Romulus, MI 48174 ("the Property"), which is in The Highlands Estates ("the Association"). Dkt. 20, Pg. ID 107; Dkt. 21, Pg. ID 181. The Association was established as a condominium under the Michigan Condominium Act, M.C.L.A. § 559.101 *et seq*. Dkt. 21, Pg. ID 181.

By acquiring interest in the Property, Plaintiff agreed to be "subject to the provisions and terms set forth" in the Condominium Documents, which included the Association's By-laws. Dkt. 21-2: By-laws, Art. I. The By-laws provide that Association Co-owners would share the costs of all expenses arising from the management, administration, and operation of the Association by paying annual assessments. *Id.* at Art. II. Moreover, the By-laws provide that there "shall be a default if such assessment, or any part thereof, is not paid to the Association in full on or before the due date for such payment." Dkt. 21-2: By-laws, Art. II, § 3. Finally, regarding collection costs, the By-laws provide that:

**The expenses incurred in collecting unpaid assessments**, including interest, costs, actual attorneys' fees (not limited to statutory fees) and advances for taxes or other liens paid by the Association to protect its lien, **shall be chargeable to the Co-owner in default and shall be secured by the lien on his Unit**.

*Id.* at Art. II, § 6(e) (emphasis added).

According to Plaintiff, he first became delinquent in paying his association dues in January 2016. Dkt. 20, Pg. ID 107. The Association's Account History Report for Plaintiff's account, reproduced in part below, indicates that Plaintiff owed $550.00 as of January 12, 2016. Dkt. 20-2.

| Trans Date | Transaction | Charges | Payments | Balance | Date Billed | Reference | Comments |
|---|---|---|---|---|---|---|---|
| 01/04/2016 | Association Fee | 125.00 | | 525.00 | | Quarterly Charges | Recurring Charges: 01/04/2016 |
| 01/12/2016 | Late Fee | 25.00 | | 550.00 | | Late Fee | Late Fee: 01/12/2016 |
| 02/12/2016 | Late Fee | 25.00 | | 575.00 | | Late Fee | Late Fee: 02/12/2016 |
| 03/14/2016 | Late Fee | 25.00 | | 600.00 | | Late Fee | Late Fee: 03/14/2016 |
| 04/01/2016 | Association Fee | 125.00 | | 725.00 | | Quarterly Charges | Recurring Charges: 04/01/2016 |
| 04/12/2016 | Late Fee | 25.00 | | 750.00 | | Late Fee | Late Fee: 04/12/2016 |
| 05/11/2016 | Late Fee | 25.00 | | 775.00 | | Late Fee | Late Fee: 05/11/2016 |
| 05/25/2016 | Check | | -148.33 | 626.67 | | EE 3828 | Partial payment |
| 06/14/2016 | Late Fee | 25.00 | | 651.67 | | Late Fee | Late Fee: 06/14/2016 |
| 07/01/2016 | Association Fee | 125.00 | | 776.67 | | Quarterly Charges | Recurring Charges: 07/01/2016 |
| 07/11/2016 | Violation Fine | 75.00 | | 851.67 | | 2nd Fine Violation | Trash can outside |
| 07/12/2016 | Late Fee | 25.00 | | 876.67 | | Late Fee | Late Fee: 07/12/2016 |
| 07/25/2016 | Check | | -72.74 | 803.93 | | EE 4062 | Partial payment |
| 08/11/2016 | Late Fee | 25.00 | | 828.93 | | Late Fee | Late Fee: 08/10/2016 |
| 08/31/2016 | Violation Fine | 100.00 | | 928.93 | | 3rd Fine Violation | Trash can outside |
| 09/13/2016 | Late Fee | 25.00 | | 953.93 | | Late Fee | Late Fee: 09/13/2016 |
| 10/03/2016 | Association Fee | 125.00 | | 1,078.93 | | Quarterly Charges | Recurring Charges: 10/03/2016 |

*Excerpt from Dkt. 20-2: Highlands Estates Condominium Association Account History Report for Plaintiff*

In January 2016, the Association retained Defendant to collect Plaintiff's past due assessments. Dkt. 21, Pg. ID 183. Defendant thereafter began sending letters to Plaintiff, indicating it had been

retained to collect unpaid assessments owed to the Association and that it would proceed with all legal means—including the filing of a lien, and if necessary, foreclosure—to collect the amounts owed to the Association. *See* Dkt. 20 Exh. 1, 3–6, 8, and 10–12. Defendant also informed Plaintiff that he would be responsible for all costs of collection as set forth in the Association's By-laws. *See id.*

Defendant maintains that Plaintiff's debt increased in conjunction with the costs incurred by the Association for Defendant's efforts in collection Plaintiff's unpaid assessments. *See* Dkt. 21. The table below provides an overview as to the letters sent by Defendant that indicated increases to the amount of Defendant's outstanding debt:

| Letter Date | Collection Charges Imposed | Reported Outstanding Debt |
|---|---|---|
| January 22, 2016 (Dkt. 20-1) | Account Setup Fee / Dunning Letter ($270.00) | $820.00 |
| March 2, 2016 (Dkt. 20-2) | -- | $845.00[1] |
| March 18, 2016 (Dkt. 20-4) | Lien Recording Fee ($395.00) | $1,265.00 |
| April 1, 2016 (Dkt. 20-5) | Escalated Outreach Service ("EDO") ($350.00) | $1,740.00 |

[1] While Defendant's March 2, 2018 letter did not reflect any additional collection costs since its January 22, 2016 letter, Plaintiff's outstanding debt increase can be attributed to a $25.00 late fee imposed by the Association on February 2, 2016. *See* Dkt. 20-2.

In addition to the charges depicted in the above table, Defendant also charged Plaintiff a $100 fee for an "EDO 2." Dkt. 20-7, Pg. ID 134. Defendant's statement of account for Plaintiff indicates Plaintiff's starting balance of $550.00 on January 12, 2016 ballooned to $1,865.00 as of April 4, 2016. *See id.*

Plaintiff does not dispute that he failed to pay assessments owed to the Association when due. Instead, he argues that he is not obligated to pay the aforementioned collection costs unless and until the Association provided him notice and a hearing or prevailed in a legal action against Plaintiff as to the charges. *See* Dkt. 20, Pg. IDs 118–19. Plaintiff argues that because he was not given the opportunity to challenge the imposition of those fees in court or some other notice and hearing procedure, efforts to collect these fees violate various provisions of the FDCPA and the MOC. *See id.*

On March 25, 2016, the Association, through Defendant, recorded a lien on Plaintiff's Property for nonpayment of Association assessments. Dkt. 20-9. On July 21, 2017, Plaintiff was offered a settlement on the full balance owed, which Plaintiff accepted and paid, and the Lien was released. *See* Dkt. 20 Exhibits 9, 14, and 15.

Plaintiff has moved for summary judgment, arguing it is entitled to judgment as a matter of law that Defendant's collection practices violated the FDCPA and the MOC. *See* Dkt. 20. Defendant opposes the motion. Dkt. 21.

## III. Standard of Review

Summary judgment is proper if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir. 1984). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986).

In deciding a motion for summary judgment, the court must draw all reasonable inferences in favor of the non-moving party. *Perry v. Jaguar of Troy,* 353 F.3d 510, 513 (6th Cir. 2003). While the Court may not make credibility judgments or weigh the evidence at the summary judgment stage, *Moran v. Al Basit LLC,* 788 F.3d 201, 204 (6th Cir. 2015), a mere scintilla of evidence is insufficient to survive summary judgment. *Anderson,* 477 U.S. at 252. The non-movant must produce enough evidence to allow a reasonable jury to find in his or her favor by a preponderance of the evidence. *Id.*

## IV.  Analysis

Plaintiff alleges that Defendant violated 15 U.S.C. §§ 1692e(2)(A), 1692f(1), and 1692e(10) by misrepresenting the character, amount, or legal status of Plaintiff's debt; by collecting an amount not permitted by law; and by using false representations or deceptive means to collect or attempt a debt owed by Plaintiff. *See* Dkts. 1, 20. Moreover, Plaintiff alleges Defendant violated M.C.L.A. § 339.915(c) by making an inaccurate, misleading, untrue or deceptive statement or claim in a communication to collect a debt, and M.C.L.A. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee. *See id.*

"Congress enacted the FDCPA to eliminate abusive, deceptive, and unfair debt collection practices." *Wilson v. Trott,* 118 F. Supp.3d 953, 959 (E.D. Mich. 2015) (internal citations omitted). "The Act prohibits a wide array of specific conduct, but it also prohibits, in general terms, any harassing, unfair or deceptive debt collection practice, which enables the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed." *Currier v. First Resolution Inv. Corp.,* 762 F.3d 529, 533 (6th Cir. 2014) (internal citations omitted). When assessing alleged violations under the FDCPA, courts must view the surrounding conduct through the eyes of the "least sophisticated" consumer to determine whether

conduct fits within the FDCPA's broad scope. *Id.* The least sophisticated consumer test is designed "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky LLC,* 518 F.3d 433, 438 (6th Cir. 2008) The standard "protects naïve consumers, [but] it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Id.* at 438–39.

## A. Plaintiff's Responsibility for Collection Costs Incurred by the Association

As an initial matter, the Court finds it important to note that Plaintiff does not dispute that he failed to pay certain condominium assessments owed when due. Rather, Plaintiff maintains that he is not responsible to pay late fees and collection charges incurred as a result of his default, as claimed by Defendant. Dkt. 20, Pg. ID 115. Citing to Michigan Occupational Code § 559.206(b), Plaintiff argues that "[a]n association is not entitled to collect sums for anything other than unpaid assessments, unless the association prevails in a legal proceeding for payment of the unpaid assessments, or if the owner is provided notice and hearing regarding those additional sums as set forth in the association bylaws." Dkt. 20, Pg. ID 116. According to Plaintiff, because the Association has not prevailed in

a legal proceeding against him, and because it did not provide him notice and a hearing in relation to his unpaid assessments, Defendant is not entitled to pursue and collect any late fees or collection costs from Plaintiff. *Id.* Thus, according to Plaintiff, because the Association is not entitled to any late fees or collection charges, Defendant violated 15 U.S.C. §§ 1692e, 1692f, and the MOC by seeking to collect such funds. *See* Dkt. 20, Pg. ID 116.

Plaintiff's position on this issue is not well-taken; Plaintiff incorrectly interprets the cited portions of the Michigan Condominium Act and relevant governing law. The Michigan Condominium Act provides an association of co-owners various forms of relief when faced with a co-owner's default. *See* M.C.L.A. § 559.206. However, Plaintiff misreads § 559.206(b) as *requiring* an association to commence and prevail in a legal proceeding in order to be entitled to late fees and collection costs associated with his default. Rather, § 559.206(b) provides that a legal proceeding is *one of* the forms of relief available to an association in these circumstances. *See* M.C.L.A. § 559.206(b). The section provides that when an association brings a legal proceeding arising out of an alleged default by a co-owner and is successful, the association may recover the costs of the legal proceeding and reasonable attorney fees to the extent the condominium documents expressly provide. M.C.L.A. § 559.206(b). But it does not *require* a condo association to bring such a lawsuit.

Thus, § 559.206(b) provides one mechanism to an association when faced with a default by a co-owner, but it does not require associations to bring a legal proceeding to resolve an alleged default.

Plaintiff also incorrectly argues that he cannot be liable for late fees and collection costs in this case because he was not provided notice and a hearing as to these amounts. Dkt. 20, Pg. IDs 115–19. Plaintiff cites to § 559.206(c) of the Michigan Condominium Act for this argument and states that "[w]hile an association of co-owners may levy fines against co-owners for late charges or take advantage of other reasonable remedies provided in the condominium documents, it may only do so 'after notice and hearing thereon . . . .'" Dkt. 20, Pg. ID 117 (citing M.C.L.A. § 559.206(c) in part). The relevant section of the Condominium Act, however, provides that when faced with a default by a co-owner, an association is entitled to relief in the form of:

> (c) such other reasonable remedies the condominium documents may provide *including but without limitation* the levying of fines against co-owners after notice and hearing thereon and the imposition of late charges for nonpayment of assessments as provided in the condominium bylaws or rules and regulations of the condominium.

Mich. Comp. Laws § 559.206(c) (emphasis added). This subsection raises three important points in relation to Plaintiff's arguments. First, the subsection allows reasonable remedies as determined by

and provided for in the underlying condominium documents. Second, while the subsection provides examples of reasonable remedies that may be contained in condominium documents, the examples provided are explicitly classified as being "without limitation" to the "such other reasonable remedies" that an association may take pursuant to its condominium documents. *See id.* Third, the subsection requires an association to provide notice and a hearing before it *levies fines*; and it notably distinguishes between "fines" on the one hand and other fees (such as late charges for nonpayment) on the other. Regarding this distinction, the subsection provides that notice and a hearing must be provided ahead of the levying of fines but does not require the same for the imposition of other fees. *Id.*

Plaintiff's case does not involve the levying of fines by the Association or the Defendant, but rather late fees and collection costs associated with Plaintiff's default in paying association dues. For these reasons, the Court rejects Plaintiff's argument that the Association needed to provide him notice and a hearing or that it needed to prevail in a legal action in order to pursue late fees and the costs it incurred to collect Plaintiff's default payments.

As explained briefly above, the Michigan Condominium Act provides that an association may pursue reasonable remedies against a co-owner in default, as provided in its condominium documents. *See* M.C.L.A. § 599.206(c). When Plaintiff acquired interest in the

Property, he agreed to be "subject to the provisions and terms set forth" in the Associations condominium documents. Dkt. 21-2: By-laws, Art. I; *see* M.C.L.A. § 559.165; *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 698 F.3d 290, 293 (6th Cir. 2012). The Association's governing By-laws provide, in relevant part, that: 1) Plaintiff must pay annual assessments,[2] 2) Plaintiff is subject to a late fee on each installment which is in default for ten or more days,[3] and 3) "[t]he expenses incurred in collecting unpaid assessments, including interest, costs, [and] actual attorneys' fees . . . shall be chargeable to the Co-owner in default and shall be secured by the lien on his Unit." Dkt. 21-2: By-laws, Article II, Sections 3, 6(e).

In this case, Plaintiff defaulted on his assessment payments. The governing By-laws specifically authorize the Association to pass the costs of collecting his default payments on to Plaintiff. For these reasons, the Court finds that the parties have a genuine dispute over Plaintiff's obligations to pay late fees and collection costs associated with his default, and that Plaintiff is not entitled to judgment

---

[2] The By-laws provide that "[a]nnual assessments shall be payable by co-owners either in twelve (12) equal monthly installments or quarterly, semi-annually or annually in the discretion of the Board of Directors." Dkt. 21-2: By-laws Article II, Section 3.

[3] "The payment of an assessment shall be in default if such assessment, or any part thereof is not paid to the Association in full on or before the due date for such payment. A late fee of Twenty-Five ($25.00) Dollars shall be imposed on each installment which is in default for ten (10) or more days." *Id.*

as a matter of law on the issue. *Anderson,* 477 U.S. at 247–48 (defining a genuine dispute as one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."). Plaintiff is therefore not entitled to summary judgment on his claim that he is not obligated to pay collection costs associated with his default in payment. Fed. R. Civ. P. 56.

## B. Plaintiff is Not Entitled Summary Judgment Regarding Defendant's Liability for its Attempts to Collect Late Fees and Collection Costs

Plaintiff also seeks summary judgment on several claims alleging violations under the FDCPA and the Michigan Occupational Code based solely on Defendant seeking to collect late fees and collection costs. Each of these claims hinges on Plaintiff's core claim that the Defendant charged him unauthorized collection fees. Specifically, Plaintiff seeks summary judgment on his claims that: 1) Defendant violated 15 U.S.C. § 1692e(2)(A)[4] by claiming Plaintiff owed late fees and collection fees and seeking to collect such fees pursuant to those representations; 2) Defendant misrepresented the rights of the Association by claiming Plaintiff owed late fees and collection charges in addition to his unpaid assessments in violation

---

[4] Section 1692e(2)(A) prevents a debt collector from "falsely representing the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).

of § 1602e(2)(A) and Mich. Comp. Laws § 339.915(e);[5] and 3) Defendant violated Section 1692f[6] by "wrongfully collecting late fees and collection charges" from Plaintiff. *See* Dkt. 20, Pg. IDs 118-19.

As discussed above, the agreement underlying the debt—the Association's By-laws—specifically authorized the Association to recover collection costs incurred in its efforts to collect past due assessments owed. Dkt. 21-2: By-laws, Art. II, § 6(e). Because Plaintiff is not entitled to summary judgment on the issue of his clear and unconditional obligations to pay late fees and collection costs incurred in collecting his default assessments, his arguments that the Defendant violated the FDCPA and Michigan law by its seeking to collect these sums are unavailing. The evidence in the record as to whether Defendant violated the FDCPA and Michigan law by seeking to collect from Plaintiff late fees and collection costs is such that a reasonable jury could possibly return a verdict for the Defendant by a preponderance of the evidence, thereby precluding a grant of summary judgment to Plaintiff. *See Anderson,* 477 U.S. at 247–48,

---

[5] The Michigan Occupation Code outlaws "[m]aking an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt." M.C.L.A. § 339.915(e).

[6] Section 1692f prohibits unfair or unconscionable practices, including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

252. Specifically, a jury could find that because the By-laws explicitly authorized the Association to charge Plaintiff late fees and collection costs incurred in connection with his default, Defendant did not violate 15 U.S.C. §§ 1692e(2)(A), 1692f, or M.C.L.A. § 339.915(e) by seeking to collect these sums.

## C. Genuine Issues of Material Fact Remain as to Whether Defendant Only Sought to Collect Costs "Incurred By" the Association

Plaintiff advances several arguments that attack the validity of the amounts Defendant sought to collect from him. For instance, Plaintiff points to a $395.00 fee that Defendant sought to collect on or about March 18, 2016. Dkt. 20-4. In the letter at issue, Defendant stated:

> In our previous letter, we advised you that if the debt was not paid within 15 days, a lien would be filed against your property and additional collection charges would be added to your debt. Unfortunately we have not received full payment of the debt. Accordingly, this letter is your notice that a lien has been mailed for recording against your property. A $395.00 collection fee, actual attorney's fees incurred to prepare the lien and actual filing fees have been charged to your association[.]

*Id.* Plaintiff argues that while Defendant filed a lien against the Property on March 28, 2016, it did not execute a *discharge* of the lien until June 28, 2016 once Plaintiff's account was paid in full. Dkt. 20, Pg. ID 121. Highlighting that Defendant's "Collection Ac-

tivity & Cost Notice" document indicates the $395.00 "Lien Record-ing and Discharge Package" includes and charges for services re-lated to the discharge of a lien and not merely its filing alone, Plain-tiff argues that Defendant violated the FDCPA by charging Plain-tiff in March 2016 for services that were not performed until June 28, 2016. Dkt. 20, Pg. IDs 121–22 (internal citations omitted).

Plaintiff also argues that Defendant misrepresented its charges to him on a statement dated April 12, 2016, where it lists the $395.00 charge as a "Lien Recording Fee," rather than a "Lien Re-cording and Discharge Package." Dkt. 20, Pg. IDs 121–22 (citing Dkt. 20-7, Pg. ID 133). Plaintiff argues this is a plain violation of 15 U.S.C. § 1692e(2)(A), which prohibits a debt collector from falsely representing the character, amount, or legal status of any debt. *Id*; *see* 15 U.S.C. § 1692e(2)(A).

Additionally, Plaintiff maintains that he was notified of an addi-tional charge of $650.00 for "Post Outreach Lien Enforcement" on or about June 15, 2016 and argues that Defendant never performed the services related to this charge. Dkt. 20, Pg. ID 122.

Finally, Plaintiff argues that even if the Association was entitled to late fees or collection charges, Defendant violated 15 U.S.C. § 1692f and Mich. Comp. Laws § 339.915(n) (which prohibits a debt collector from "[u]sing a harassing, oppressive, or abusive method

to collect a debt") because the collection charges claimed by Defendant are unfair or unconscionable. Dkt. 20, Pg. ID 121. Moreover, Plaintiff charges Defendant with "clearly violat[ing] Mich. Comp. Laws § 339.915(q) . . . in failing to implement a procedure to prevent a violation by an employee." Dkt. 20, Pg. ID 123.

In his motion for summary judgment, Plaintiff summarizes the above-captured arguments by insisting that:

> Charging Mr. Yee for services not performed as well as excessive fees and seeking to enforce such charges via the Lien, were deceptive and mispresented the character, amount and legal status of the amount owed by Plaintiff. Such actions are per se violations of 15 U.S.C. § 1692e and 15 U.S.C. § 1692f of the FDCPA and Mich. Comp. Laws § 339.915(n) of the MOC.

Dkt. 20, Pg. ID 123.

Plaintiff's arguments directed toward the legitimacy of the amounts charged by Defendant for its collection activity alternate between claiming that Defendant charged for services it did not perform and that Defendant charged too much for services it did perform. Because Plaintiff is obligated to pay "expenses incurred" by the Association, the relevant questions in determining Defendant's liability under the FDCPA and Michigan law—or the lack thereof— is whether the Defendant represented, sought to collect, and collected debts beyond those it was authorized to collect on behalf of the Association. As explained above, Plaintiff maintains Defendant

misrepresented the nature of the expenses incurred and subsequently collected unauthorized amounts from him. Defendant, on the other hand, maintains that its "collection costs were for costs that were actually incurred, for work that was actually completed, and chargeable to the Plaintiff." Dkt. 21, Pg. ID 198. Defendant supports its position with a Declaration from its Vice President and General Counsel, Jacqueline Galofaro, who declares the same. *See* Dkt. 21-3.

Accordingly, the record discloses a genuine issue of material fact: were the fees charged by Defendant supported by the actual costs it was permitted to collect—the collection costs "incurred by" the Association? Plaintiff says no. Defendant says yes. A factfinder must decide. Thus, for the reasons explained above, the Court finds that Plaintiff is not entitled to summary judgment on his claims that Defendant violated the FDCPA and the Michigan Occupational Code based on the amounts it sought to collect from him.

### D. Plaintiff is Not Entitled Summary Judgment as to Whether Defendant's Letters Misrepresented the Legal Status of His Debt

Plaintiff also argues that two separate ledgers were kept for his account, insisting that the Association kept a ledger for assessments and fees chargeable to Plaintiff and that Defendant kept a "second ledger," which added in the collection costs at issue in this action. Dkt. 27, Pg. ID 401. In his amended motion for summary

judgment, Plaintiff explains how the letters Defendant mailed to him stated balances due that were different than the amounts due indicated on his Account History Report from the Association for the respective time periods *See* Dkt. 20, Pg. IDs 14–15. The Court notes that the record is unclear as to whether Plaintiff possessed the "Account History Report" from the Association, Dkt. 20-2, at the time he was receiving collection letters from Defendant. Nevertheless, Plaintiff argues that "Defendant's communications and practices are misleading as to the nature and legal status of the underlying debt and impede Plaintiff's ability to respond or dispute." Dkt. 27, Pg. ID 401.

Defendant maintains that all the costs and fees chargeable to Plaintiff are "easily explained by the documents already in the possession of the Plaintiff." Dkt. 21, Pg. ID 188. Defendant insists that the ledger kept by the Association does not reflect Defendant's costs of collection. Dkt. 21, Pg. ID 184. Defendant points to each of the letters sent to Plaintiff where it indicates what, if any, additional collection charges have been or will be added to Plaintiff's account and argues that those letters clearly indicate the balance includes the costs of collection of Plaintiff's unpaid assessments.

For instance, in Defendant's first letter to Plaintiff, dated January 22, 2016, Defendant indicates that it is assisting Highlands Estates to collect a debt they claim Plaintiff owes; states the current

debt amount; provides information regarding how Plaintiff can dispute the validity of the debt; and stated the "total balance of the debt includes unpaid association dues and may also include special assessments, interest, fees, fines, attorney's fees and ***collection costs***." Dkt. 20-1 (emphasis added). In Defendant's second letter, dated March 2, 2016, Defendant indicates that if Plaintiff does not pay the debt, Defendant's debt collection activity will continue, and additional charges will be added to the amount Plaintiff owes. *See* Dkt. 20-3.

Defendant's March 18, 2016 letter states that it is charging a "$395.00 collection fee" and forecasted "an additional $350.00 collection charge" would be added for Defendant's "Escalated Debtor Outreach Process" if the balance is not paid or if Plaintiff does not agree to an acceptable payment plan. Dkt. 20-4. Defendant's April 1, 2016 letter explained that "this letter is your notice that we have proceeded with the next step in our collection process and an additional $350.00 collection cost has been charged to the association to be added to your balance." Dkt. 20-5. The letter continues, "[y]our current total balance is $1740.00. This balance includes the additional collection charge mentioned above and takes into account any payments that may have been received." *Id*.

Defendant argues that its practices would not mislead the least sophisticated consumer as to the nature and legal status of the underlying debt and explains how the balances due—as indicated through Defendant's letters—reflected Plaintiff's unpaid assessments (as shown on his Account History Report) plus Defendant's collection costs (as detailed throughout its letters). Dkt. 21, Pg. IDs 184–88. But Plaintiff disagrees. *See* Dkt. 27, Pg. ID 401–02.

As detailed above, the record reflects that Defendant provided some explanation of the basis for its charges in the letters mailed to Plaintiff. The record also shows how the amounts detailed in Defendant's various letters, and purportedly charged to Plaintiff, coincided with the balance due on Plaintiff's Account History Report and the costs allegedly incurred in collecting Plaintiff's default payments.

Thus, the Court finds that there is a genuine dispute of material facts as to this issue and that the record contains evidence of "a sufficient disagreement to require submission to a jury," rather than evidence that is "so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52. The record contains sufficient evidence to allow a reasonable jury to find Defendant's favor by a preponderance of the evidence, and consequently Plaintiff is not entitled to summary judgment. *Anderson*, 477 U.S. at 252.

The Court also finds that Plaintiff is not entitled to summary judgment on its claim that Defendant's communications and practices violate the FDCPA by misleading the least sophisticated consumer as to the nature and legal status of the underlying debt. That is also a question the jury must decide.

## V.   Conclusion

For the foregoing reasons, Plaintiff's Amended Motion for Summary Judgment, Dkt. 20, **DENIED**.

**SO ORDERED.**

Dated:  September 24, 2018

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on September 24, 2018.

s/A. Chubb
Case Manager